IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KAREN SUE CARLSON                                                        PLAINTIFF


         v.                              CASE NO.        13-2030


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                        DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).


### I.  Procedural Background:

The plaintiff filed an applications for DIB  on January 18, 2011, alleging an onset date of

April 24, 2010, due to plaintiff's irritable bowel syndrome, reflux disease, and chronic pain. (T.

145).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then

requested an administrative hearing, which was held on October 31, 2011.  Plaintiff was present

and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael
J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 47 years of age and possessed a College Degree in Organizational Management (T. 146).  The Plaintiff  had past relevant work ("PRW") experience as a community marketing specialist, marketing department, marketing director, and corporate account manager.  (T. 146).

On November 18, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's irritable bowel syndrome, chronic abdominal pain, and cervical degenerative disc disease did not meet or equal any Appendix 1 listing.  T. 14.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to light work.  T. Id.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of her past relevant work as she actually performed it or as it is generally performed in the national economy.  T. 17.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

### A.  Development of the Record:

The Plaintiff contends the ALJ did not fully and fairly develop the record concerning the Plaintiff's alleged depression. (ECF No. 10, pp. 10-11).  The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)).  The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Plaintiff did not allege a mental impairment either in her application documents, or at the administrative hearing (Tr. 22-53, 145). The ALJ is not obligated to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir.2010).

Plaintiff also complains that the record of evidence was not fully developed  because the ALJ did not contact Luc Balis, M.D., in order to get a clarification of his medical opinions. (See ECF No. 10,  at 10-11).  "The need for medical evidence, however, does not require the [Commissioner] to produce additional evidence not already within the record. '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.' " *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir.2001) (quoting *Frankl v. Shalala*, 47 F.3d 935, 937–38 (8th Cir.1995)) (alterations in original).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this case the court believes that the ALJ properly developed the record.

**B.  Treating Physician's Opinion:**

The Plaintiff contends that the ALJ erred by not giving controlling weight to the MSS provided by the Plaintiff's treating Physician, Dr. Balis, who found that the Plaintiff could lift 10 pounds Occasionally, less than 10 pounds Frequently, and that she could stand and/or walk for less than 2 hours in an 8-hour workday (T. 405) and could sit for less than 6 hours in an 8-hour workday. (T. 406).  He also found that she had restrictions in pushing and/or pulling and could never climb, crouch, or crawl. (T. 406).

In assessing the medical record as a whole, the ALJ spent the majority of his assessments with Dr. Balis' treatment notes (Tr. 15-16). What the ALJ did discount was the medical source statement form (the form) Dr. Balis completed on March 31, 2011 (Tr. 16, 405-407). On the form Dr. Balis expressed his opinions regarding Plaintiff's ability to perform work-related activities by checking various limitations on the three-page form (Tr. 405-407). The form specifically instructs doctors to explain "What medical/clinical finding(s) support your conclusions?" (Tr. 406-407). Dr. Balis merely made checks on the form to indicate degrees of limitations and offered no explanation as to the basis of his opinions (Tr. 405-407). Such opinion evidence is conclusory, and the ALJ correctly discounted it. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that an ALJ properly gave no evidentiary weight to a physician's conclusory opinion when it consisted of three checklist forms, cited no medical

evidence, and provided little to no elaboration).  *See Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (internal quotation marks and citation omitted)); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (recognizing that "[w]e have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form stand alone, and were never mentioned in [the physician's] numerous records o[f] treatment nor supported by any objective testing or reasoning" (first and second alterations added) (internal quotation marks and citation omitted)).

The ALJ correctly found that Dr. Balis' opinion, as expressed on the MSS form, "is not supported by the objective findings in the medical evidence of record that clearly reflect routine, conservative medical treatment for [Plaintiff's] condition" (Tr. 16).  It is also significant that no functional limitations were imposed by the other treating physicians of record (Tr. 200-211, 212-249, 250-319, 320-339, 411-427).

**C: Residual Functional Capacity:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating

physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 *citing  Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

### 1. Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to

decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*  687 F.3d 1086, 1091 (C.A.8 (Ark.),2012).

This court concludes that, because the ALJ gave several valid reasons for the ALJ's determination that Plaintiff was not entirely credible, the ALJ's credibility determination is entitled to deference, *see Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir.2012).

### 2.  RFC Determination

The ALJ determined that the Plaintiff had the RFC to perform light work. [2] The ALJ also found that chronic "pain limits but does not preclude her ability to perform basic work tasks." (T. 14).  The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010) *Hibshman v. Astrue*  2012 WL 1158707, 3 (E.D. Ark.,2012).

In January 2010, Plaintiff underwent a computed axial tomography (CT) examination, which indicated that the lower back pain resulted from a nonobstructive 2-3 centimeter kidney stone (Tr. 225). However, there is no indication in the medical evidence that physicians recommended or that Plaintiff sought treatment to excise the kidney stone. The lack of treatment indicates the minor medical impact caused by the kidney stone, which indicates the matter was

---

[2]Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567

not disabling. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (holding that an ALJ may discount an alleged impairment when the plaintiff had not sought, or been referred for professional health care and treatment).

In January 2011, Plaintiff presented to the National Jewish Health for evaluation of angioedema and symptoms of abdominal pain (Tr. 266-319). Plaintiff underwent an extensive series of physical examinations, laboratory tests, and radiographic examinations, all of which were inconclusive (Tr. 279-280) and presented "no clear etiology" of the basis of Plaintiff' s complaints of abdominal pain (Tr. 288).

 In February 2011, Plaintiff presented to Tony A. de Mondesert, M.D. (Tr. 403-404). Dr. de Mondesert examined Plaintiff and opined that she had irritable bowel syndrome (Tr. 404). Dr.de Mondesert noted that he had suggested this diagnoses to Plaintiff after prior examinations, and she was "not satisfied" (Tr. 404). The doctor persisted and recommended a change in her diet, and a regimen of anticholinergic medications3 (Tr. 404). In March 2011, Dr. de Mondesert reported that the medications were proving effective, and Plaintiff was "actually feeling better" and enjoying "significant improvement" (Tr. 402).  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004)

In March 2011 Dr. Jim Takach, a non-examining consultive physician, rendered a Physical RFC Assessment finding the Plaintiff could lift 10 pounds Occasionally, less than 10 pounds Frequently, and that she could stand and/or walk for at least 2 hours in an 8-hour workday and could sit for 6 hours in an 8-hour workday.  He also found she has no limitations on her ability to push and/or pull. (T. 392).  Dr. Takach's Assessment was reviewed and affirmed by

Dr. Ronald Crow on April 24, 2011.

The Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010) *Hibshman v. Astrue* 2012 WL 1158707, 3 (E.D.Ark.) (E.D.Ark.,2012).  The court finds that the ALJ's RFC determination was proper.

**D.  Vocational Expert Testimony**

The vocational expert explained that Plaintiff's past relevant work consisted of her work as a marketing director, outside sales representative, communications sales representative, and membership sales representative (Tr. 36, 38, 39, 41).  The vocational expert further explained that these jobs were performed at the light residual functional capacity and at a semi-skilled to skilled level (Tr. 39, 41). In assessing the demands of a claimant's past relevant work, ALJ is permitted to look at the actual functional demands and job duties of the claimant's past relevant work. *Evans v. Shalala*, 21 F.3d 832, 833-34 (8th Cir.1994).

Testimony from a vocational expert ("VE") based on a properly-phrased hypothetical question constitutes substantial evidence. *See Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); cf. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." Id. (citing Stout v. Shalala, 988 F.2d 853, 855 (8th Cir.1993)); see also *Morse v. Shalala*, 32 F.3d 1228, 1230 (8th Cir.1994).   A hypothetical need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.  Roe v. Chater, 92 f.3d 672, 676 (8th Cir. 1996).

In this case the ALJ's decision that the Plaintiff could perform her past relevant work is supported by the record.

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this December 2, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
U. S. MAGISTRATE JUDGE

-11-